MHN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF YORKVILLE a/k/a United City of Yorkville for the Use and Benefit of PIRTANO CONSTRUCTION COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> OCEAN ATLANTIC SERVICE CORPORATION and AMERICAN SOUTHERN INSURANCE CO., <br><br> Defendants. | Case No. 10-cv-1261 <br><br> Judge John W. Darrah |
| CITY OF YORKVILLE a/k/a United City of Yorkville for the Use and Benefit of AURORA BLACKTOP, INC., <br><br> Plaintiff, <br><br> v. <br><br> OCEAN ATLANTIC SERVICE CORPORATION and AMERICAN SOUTHERN INSURANCE CO., <br><br> Defendants. | Case No. 10-cv-1473 <br><br> Judge John W. Darrah |
| CITY OF YORKVILLE a/k/a United City of Yorkville for the Use and Benefit of RYAN INCORPORATED CENTRAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> OCEAN ATLANTIC SERVICE CORPORATION and AMERICAN SOUTHERN INSURANCE CO., <br><br> Defendants. | Case No. 10-cv-2252 ✓ <br><br> Judge John W. Darrah |

# MEMORANDUM OPINION AND ORDER

Three nearly identical actions were brought against Ocean Atlantic Service Corporation ("Ocean Atlantic") and American Southern Insurance Company ("American Southern") in the Circuit Court of Kendall County by three separate plaintiffs: Pirtano Construction Company ("Pirtano"); Aurora Blacktop, Inc. ("Aurora"); and Ryan Incorporated Central, Inc. ("Ryan") (collectively, "Plaintiffs"). All three cases were removed to federal court. The latter two cases were then reassigned for consolidation with Pirtano's case, which was pending on this Court's docket at the time Aurora's and Ryan's respective cases were removed. The Court's jurisdiction is premised on diversity of citizenship, pursuant to 28 U.S.C. § 1332.

Plaintiffs each claim they are due money from the proceeds of certain Subdivision Bonds in which Ocean Atlantic is the Principal and American Southern is the Surety. Although the City of Yorkville has been named as the plaintiff in each of the three suits, it is not a party. Rather, Plaintiffs style themselves "Use Plaintiffs" and purport to bring these cases in the name of the City of Yorkville for their own benefit.

Currently before the Court are American Southern's separate motions to dismiss each of the three complaints pursuant to Federal Rule of Civil Procedure 12(b)(1). American Southern asserts that Plaintiffs lack standing to sue on the Subdivision Bonds.

## BACKGROUND

The following facts are taken from the complaints filed in this action, as well as from documents attached to those complaints and submitted in connection with American Southern's motions to dismiss. On June 15, 2006, American Southern issued

2

several Subdivision Bonds in favor of the City of Yorkville "for the purpose of guaranteeing the installation" of public improvements in the subdivision of Westbury East Village. Ocean Atlantic obtained the bonds pursuant to Yorkville Subdivision Control Ordinance § 8.02.01, which requires a subdivider to post an irrevocable bond payable to the City of Yorkville "to assure the satisfactory installation of required improvements."

Plaintiffs are various subcontractors hired by Ocean Atlantic to work on the Westbury East Village subdivision. Ocean Atlantic failed to pay them for work they performed. Each of the Plaintiffs has recorded a mechanic's lien on the subdivision property in the amount that is allegedly owed to it by Ocean Atlantic and now claims it is entitled to assert a claim on the Bonds issued by American Southern.

The Subdivision Bonds at issue are identical except for the amount insured and the specific improvements guaranteed. Each bond provides a list of events or conditions that would entitle the City of Yorkville to deem Ocean Atlantic in default and to make a demand on the Bonds – one of those conditions is: "[if] the City of Yorkville has determined that the public improvements or other improvements covered by this [Bond] have been or are likely to be the subject of liens or other claims by contractors, subcontractors or third parties." *Id.* The Subdivision Bonds also provide a specific procedure to be followed by the City of Yorkville for making a demand:

Demands on this Subdivision Bond shall be made by presenting the Surety with a letter from the City Clerk of the City of Yorkville demanding performance accompanied by the certificate of the City Clerk of the City of Yorkville certifying the basis for the default and demand on this Subdivision Bond.

(Pirtano's Compl. Ex. A1.)

On June 17, 2009, Ocean Atlantic wrote a letter to the City Clerk of Yorkville, recommending that the City of Yorkville call some of the bonds and release the aforementioned mechanics' liens:

> [I]t is our recommendation that the City call all of the bonds referenced above to ensure that the subdivision is completed and that all existing mechanics liens are released.
>
> This recommendation is based upon the provisions in paragraphs 4 and 5 of the default section of the bond document (copy attached).
>
> Paragraph 4 states that the City can declare a default and call the bonds if "... the City of Yorkville has determined that the owner and/or subdivider has demonstrated that they will be unable to complete the improvements." There are presently three foreclosures pending that will prevent the current owner from completing the project.
>
> Paragraph 5 states that the City can declare a default and call the bonds if "... the City of Yorkville has determined that the public improvements or other improvements covered by this commitment have been or are likely to be the subject of liens or other claims by contractors, subcontractors, or third parties." The City should be aware that there are currently five mechanics liens filed against the property totaling approximately $2.8 Million.
>
> * * * *
>
> Funds received from the bonds should be placed into an escrow to pay for the release of any mechanics liens and to ensure the completion of any improvements.

(Aurora's Compl. Ex. C.)

4

On August 31, 2009, the Yorkville City Clerk sent a "Certificate of the City Clerk Regarding Demand on Bonds" to American Southern, making a demand for payment on seven Subdivision Bonds (including the five bonds at issue in these three cases). Plaintiffs allege that due demand has been made for payment on the Bonds and that American Southern has neglected and failed to pay it.

## LEGAL STANDARD

A party may move to dismiss an action for lack of standing under Federal Rule of Civil Procedure 12(b)(1). *See Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). In considering a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the district court must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The plaintiff carries the burden of establishing standing. *Id.* A court ruling on a motion to dismiss under Rule 12(b)(1) may rely upon affidavits and other materials supporting its motion. *United Phosphorus Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

When the district court's subject-matter jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332, the district court applies the substantive law of the forum state as it determines the courts of that state would apply it. *Davis v. G.N.*

5

*Mortgage Corp.*, 396 F.3d 869, 879 (7th Cir. 2005). Accordingly, Illinois law must be applied to decide whether the Subdivision Bonds at issue give Plaintiffs standing as third-party beneficiaries to enforce the Bonds.

## ANALYSIS

None of the Plaintiffs are named parties to the Subdivision Bonds. Nonetheless, Plaintiffs claim that they have standing to assert claims on the Bonds as third-party beneficiaries. Each Plaintiff bases its argument on the provision in the Bonds providing that the existence or likelihood of mechanics' liens or other claims by contractors, subcontractors, or third parties would entitle the City of Yorkville to treat Ocean Atlantic in default. According to Plaintiffs, that provision is evidence that the Bonds were intended to benefit Ocean Atlantic's subcontractors, even though subcontractors were not expressly made parties to the Bonds. Plaintiffs also cite a provision in the Bonds stating that "all demands for payment in conformity with the terms of this Subdivision Bond will be duly honored on presentation." Because the City of Yorkville made those demands and American Southern did not duly honor them, Plaintiffs claim they are entitled to sue for the payment they believe should have been made for their ultimate benefit.

Illinois courts have held that a third party can recover under a contract if that contract was entered into for the third party's direct benefit:

> The rule is settled in this State that if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; if incidental he has no right to recovery.

*Carson Pirie Scott & Co. v. Parrett*, 178 N.E. 498, 501 (Ill. 1931).

This rule must be applied on a case-by-case basis because the intention of the parties is controlling and their intent can only be gleaned from a consideration of the particular contract as a whole and the circumstances surrounding the parties at the time of the contract's execution. *Barney v. Unity Paving, Inc.*, 639 N.E. 2d 592, 596 (Ill. App. Ct. 1994) (*Barney*). "[T]here is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties." *Id.* (quoting *Ball Corp. v. Bohlin Building Corp.*, 543 N.E. 2d 106, 107) (Ill. App. 1989) (*Ball Corp.*)). "The fact that the contracting parties may 'know, expect, or *even intend* that others will benefit' from their agreement is not enough to overcome the presumption that the contract was intended solely for the *direct* benefit of the parties." *Id.* (quoting *Waterford Condominium Ass'n v. Dunbar Corp.*, 432 N.E.2d 1009, 1011 (Ill. App. Ct. 1982) (*Waterford*)).

The Seventh Circuit, applying Illinois law, has held that the benefit to a third party must be clear and direct: "In order for a third party to have a right to sue, 'the contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear.'" *E.B. Harper & Co. v. Nortek, Inc.*, 104 F.3d 913, 921 (7th Cir. 1997) (*E.B. Harper*) (quoting *Barney*, 639 N.E. 2d at 596) (internal citations omitted). If the intent is not express on the face of the contract, "its implication at least 'must be so strong as to be practically an express declaration.'" *Id.* at 921 (quoting *Ball Corp.*, 543 N.E.2d at 107).

In the instant cases, there is no express declaration on the face of the Bond showing a clear intention by the parties to the Bond – American Southern, Ocean

7

Atlantic, and the City of Yorkville – to directly benefit any nonparty. Indeed, the Bond specifically provides that a default "shall entitle *the City* to make demand" on the Bond if "*the City of Yorkville* has determined that the public improvements or other improvements covered by this commitment have been or are likely to be the subject of liens or other claims by contractors, subcontractors or third parties." (Aurora's Compl. Ex. A (emphasis added).)

Although the presence of Plaintiffs' mechanics' liens entitled the City of Yorkville to deem Ocean Atlantic in default under the Bonds, the Bonds contain no requirement that any money be paid directly to lien holders, contractors, subcontractors, or third parties in the event of such a default. Rather, the provision is clearly intended to protect the City of Yorkville (the express beneficiary of the Bonds) by ensuring that the City's subdivision property would not be encumbered by liens as a result of Ocean Atlantic's failure to pay its subcontractors. The ability to satisfy and release such liens is a direct benefit to the City of Yorkville. Although calling the Bonds in that situation would also provide an *incidental* benefit to Plaintiffs, the Bonds do not evidence any express intent to provide for Plaintiffs' *direct* benefit.

In the absence of such an express intent, the implication arising from the Bond must be so strong as to be "practically an express declaration" in order for Plaintiffs to be third-party beneficiaries. *See E.B. Harper*, 104 F.3d at 921. In these cases, there is no such implication. In the entire Bond, the words "contractors", "subcontractors", and "third parties" appear just once each: in paragraph 5, which simply provides the conditions of default. By contrast, numerous portions of the Bond define the rights and

8

obligations of the City of Yorkville and American Southern.[1] Moreover, the Bond expressly provides that it is between the Surety and the City and that its terms shall not be amplified:

> This Subdivision Bond sets forth in full terms of this undertaking between the Surety and the City, and such undertaking shall not in any way be modified, amended, amplified, nor shall it be limited by reference to any documents, instrument or agreement referred to herein, and any such reference shall not be deemed to incorporate herein by reference any document, instrument or agreement.

(Aurora's Resp. Ex. A.)

The Bond was "issued for the purpose of guaranteeing the installation of the [specific improvements] in [Westbury East Village]." (Aurora's Resp. Ex. A.) The provision regarding mechanics' liens, when read together with the stated purpose of the Bond, is in the Bond for the benefit of the City of Yorkville to ensure that it can complete the project by having funds to pay contractors to finish the improvements – not necessarily to pay contractors, subcontractors, and third parties for work they have already done.

Moreover, the fact that Aurora has filed a lien and the City of Yorkville has made a demand for the Bonds is not relevant to the issue of standing; nor does it alter the above analysis. The time of determining whether the parties to a contract intended to directly

---

[1] E.g.: (1) "Said amount is available to be drawn upon for the benefit of said City upon presentation to this institution of your demand for performance accompanied by a copy of this Subdivision Bond"; and (2) "the Surety's obligation to the City is based solely on this Subdivision Bond engagement between this Surety and the City and is not subject to instructions from our customer." (Pirtano's Compl. Ex. A1.)

9

benefit nonparties is at the time of execution of the contract. *See Barney,* 639 N.E. 2d at 596.

Plaintiffs rely heavily on *Avco Delta Corp. Canada Ltd. v. United States*, 484 F.2d 692 (7th Cir. 1973) (*Avco*), in support of their arguments that where the aim or purpose of a bond is that contractors be paid, the contractors are third-party beneficiaries of the bond and may enforce it. But Plaintiffs have not shown that the aim or purpose of the Bond here is to ensure they were paid. As discussed above, the Bond was to ensure the completion of improvements to the Westbury East Village subdivision, not to ensure payment to nonparties. Further, the facts of the instant cases are easily distinguished from those in *Avco*.

*Avco* did not involve a bond; it involved a construction contract between Natural Gas Pipeline Company of American ("Natural") and Canadian Parkhill Pipe Stringing, Inc. ("Parkhill"). *Id.* at 694. Under the construction contract in *Avco*, Natural was to pay all invoices to Parkhill (the contractor) upon receipt, except that Natural would retain 10 percent of all the invoices in a "retainage" account. *Id.* The retained funds would be paid to Parkhill only after Natural notified Parkhill that all work to be done under the contract was completed and done to Natural's satisfaction and Parkhill furnished Natural with a signed affidavit, stating that all bills, claims and charges for materials, labor, supplies, equipment and services, as well as all taxes incurred by Parkhill, had been paid in full. *Id.* at 694-695.

After Parkhill failed to supply the affidavit, several creditors made competing claims to the funds held in the retainage account. The court looked at the language in the

construction contract that created the retainage fund and held that the laborers, materialmen, and subcontractors were third-party beneficiaries. *Id.* at 703. In doing so, the court relied on the fact that Parkhill was obligated to provide a sworn statement that various third parties had been paid before the retained funds would be released. *Id.* The court also observed that some of the creditors could not obtain liens against Natural's property. *Id.* Thus, the *Avco* court held that Parkhill made promises that were substantially for the benefit of third parties and that those third parties had standing to assert claims against the retained funds. *Id.*

In other words, Parkhill had expressly guaranteed *payment* as well as *performance*. Here, the payment of the Bonds is not conditioned on proving that all materialmen, laborers, and subcontractors have been paid; and there is no language similar to that in *Avco* that would indicate an intention to directly benefit materialmen, laborers, and subcontractors. Nor is it alleged (as it was in *Avco*) that Plaintiffs here could not obtain liens against the property at issue – indeed, each of them did obtain a lien. The language regarding the presence of liens here does not limit how or when the proceeds of the Bond are to be disbursed. Nor does it provide that the proceeds should be paid to anyone other than the City of Yorkville. It only defines one of many occasions of default under the Bonds, and allows the City of Yorkville to make a demand on them in that event.

Plaintiffs also rely on *East Peoria Community High School District 309 v. Grand Stage Lighting Co.*, 601 N.E.2d 972 (Ill. App. 1992) (*East Peoria*). East Peoria, a school district, contracted with Tousley-Iber, a general contractor, to oversee

improvements to some of East Peoria's high school buildings pursuant to a "construction manager agreement." *East Peoria*, 601 N.E.2d at 973 and 975. Tousley-Iber hired several subcontractors to perform work on the high schools. *East Peoria*, 601 N.E.2d at 973. East Peoria made progress payments to Tousley-Iber, but Tousley-Iber failed to pay its subcontractors. *Id.* The subcontractors then filed actions against East Peoria to collect on the amounts unpaid by Tousley-Iber for work performed on the schools. *Id.* The issue in the *East Peoria* court was whether East Peoria should have required a payment bond from Tousley-Iber pursuant to Illinois' Public Construction Bond Act ("Bond Act"), codified at 30 ILCS 550/1 *et seq.*, and whether the subcontractors were third-party beneficiaries of the construction manager agreement between East Peoria and Tousley-Iber. *Id.*

After determining that the Bond Act did apply, the *East Peoria* court found that the subcontractors were third-party beneficiaries to the construction manager agreement on two grounds: (1) it would be meaningless to read the Bond Act requirements into the construction manager agreement without reading in third-party rights to enforce the Bond Act; and (2) the provision of the construction manager agreement between East Peoria and Tousley-Iber that required Tousley-Iber "to promptly pay all amounts due the trade contractors upon receipt of any payment from plaintiff" and "to submit satisfactory evidence [to East Peoria] that all indebtedness had been paid." *Id.* at 975.

The *East Peoria* court analogized *East Peoria's* contract to the *Avco* construction contract and said that "these promises regarding payment show that the parties anticipated that subcontractors' services would be provided on credit and that the parties

wanted to make express arrangements for payment to them." *Id.* Therefore, the *East Peoria* court held that the subcontractors were third-party beneficiaries of the contract between East Peoria and Tousley-Iber. There is no similar language in the Bonds here that requires the contractor to provide satisfactory evidence that all indebtedness have been paid before the Bonds are released. To the contrary, there is no mention whatsoever regarding payment of subcontractors.

Furthermore, much of the *East Peoria* decision was based on application of the Bond Act, which expressly provides rights to third parties. The Bond Act's provisions are designed to "provide an alternate remedy to that afforded by the Mechanics' Liens Act, their purpose being *to protect contractors and materialmen for whom no right of mechanic's lien exists against a public body*, and to regulate claims against public monies." *Charles Equip. Co. v. U.S. Fid. & Guar. Co.*, 491 N.E.2d 1269, 1272 (1986) (internal citations omitted and emphasis added). In this case, all of the Plaintiffs have recorded liens against the improvements they made. Further, none of the Plaintiffs' complaints or responses allege or argue that the instant Bonds fall under the provisions of the Bond Act; therefore, the *East Peoria* court's analysis regarding the application of the Bond Act to subcontractors on a public project is inapplicable.

Plaintiffs also cite *Neenah Foundry Co. v. National Surety Corp.*, 197 N.E.2d 744 (Ill. App. 1964) (*Neenah Foundry*), and argue that *Neenah Foundry* states that Illinois has a rule that a restriction on who may bring suit on a bond must appear on the bond. Arguing that the Subdivision Bonds have no such limiting language, Plaintiffs claim they

are then entitled to bring suit. Additionally, Plaintiff Ryan argues that the instant case is like *Neenah Foundry,* in that each Bond is both a payment bond and a performance bond.

In *Neenah Foundry,* the plaintiffs, materialmen, brought an action to recover money for materials used on a project against the owner of that project, Golden Valley Homes, Inc. ("Golden Valley"); the general contractor, Chesterfield Sewer & Water, Inc. ("Chesterfield"); and a surety, National Surety Corporation ("National Surety"). *Neenah Foundry,* 197 N.E.2d at 745. Golden Valley and Chesterfield were dismissed before a final judgment was entered. *Id.*

Golden Valley and Chesterfield had entered into a contract where the contractor would furnish material and labor for the construction of a sewer and water system. *Id.* at 746. The contract provided that the contractor would provide evidence that all persons who did work or furnished material had been fully paid, that the owner could withhold money until the contractor satisfied any outstanding claims and that the contractor would furnish the owner with a surety performance bond for the work for which it contracted. *Id.* at 746 and 747. Thereafter, National Surety executed a bond with Chesterfield as the principal and Golden Valley as the obligee. The bond stated that the bond would become void if the principal performed all of its obligations under the contract. *Id.* at 746. In answering whether third parties who delivered materials to the contractor were protected within the meaning and benefit of the bond, the court found it "necessary to examine the terms of the construction contract which was specifically made a part of the surety agreement." *Id.* at 746.

The court held that Neenah Foundry had third-party rights and could sue to enforce the bond, stating as follows:

> [T]he Surety has agreed to provide coverage "for the payment of claims for labor performed and materials furnished." To whom is this promise made? We hold that this additional language is directed at the suppliers of labor and materials and that as such it assures a direct benefit to them which is actionable . . . .

*Id.* at 747. Like *Avco* and *East Peoria*, *Neenah Foundry* involved a *payment* bond. The Bond agreements here, by contrast, do not involve any promise on the part of a surety to make payments to third parties.

Moreover, Plaintiffs' argument that a restriction on who may bring suit on the Bond must appear on the face of the Bond misstates the holding in *Neenah Foundry*. After first determining that the bond at issue specifically required payment for claims for materials furnished, the *Neenah Foundry* court stated that "after considering the terms of the contract and of the bond, the Surety if it desired to limit its liability to third persons could have done so in no uncertain terms" and that "the surety should not be allowed to free itself from its contractual obligations." *Id.* at 748. The court did *not* hold that a bond that otherwise does not indicate an intent to benefit a third party must expressly prohibit that third party from seeking to collect on the bond.

The distinction between performance bonds and payment bonds is also explained in the Restatement (Third) of Suretyship and Guaranty:

> When (i) pursuant to the underlying obligation, a duty of the principal obligor to a third person is created and (ii) the secondary obligor promises the obligee to fulfill the principal obligor's duty to the third person, the third person is an intended beneficiary of the secondary obligor's promise unless the agreement creating the secondary obligation expressly disclaims such liability.

15

Restatement (Third) of Suretyship & Guaranty § 69 (1996). An illustration explains the important distinction between *performance* bonds and *payment* bonds:

> P contracts to build a house for O, and to deliver the house free of liens. In connection with that contract S provides a performance bond whereby S agrees to fulfill P's obligations pursuant to the construction contract. P later employs C as a carpenter and buys lumber from L, and fails to pay both of them. C and L have no rights against S.
>
> If, on the other hand, the secondary obligor promises the obligee by a "payment bond" that the contractor's duty to pay laborers and suppliers of materials will be fulfilled, the laborers and suppliers are intended beneficiaries of that promise and may enforce it against the secondary obligor.

*Id.* § 69 cmt. c, illus. 2.

Once challenged by American Southern's motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), Plaintiffs bear the burden of proving that that they have standing to bring suit on the Subdivision Bonds. They have failed to do so. A reading of the Bonds themselves shows that American Southern guaranteed Ocean Atlantic's performance – not Ocean Atlantic's payment obligations to third parties – and Plaintiffs have not shown that the City of Yorkville, Ocean Atlantic, and American Southern intended otherwise. Any claim on the Bonds belongs exclusively to the City of Yorkville.

## CONCLUSION

As discussed above, Pirtano, Aurora, and Ryan do not have standing to bring an action on the Subdivision Bonds issued by American Southern. Accordingly, American Southern's motions to dismiss are granted. Each of the above-captioned actions is dismissed.

Date: August 24, 2010

JOHN W. DARRAH
United States District Court Judge